[Cite as *Moran Foods, L.L.C. v. Sunshine Stores, L.L.C.*, 2026-Ohio-1781.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Moran Foods, LLC, | : | |
| Plaintiff-Appellee | : | |
| | : | No. 25AP-617 |
| v. | : | (C.P.C. No. 25CV-3586) |
| Sunshine Stores, LLC et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on May 14, 2026

**On brief:** *Thompson Hine LLP, Jonathan S. Hawkins, Jack M. D'Andrea*, and *Edward G. Babbitt*, for appellee. **Argued:** *Jonathan S. Hawkins*, and *Loni Foltz*.

**On brief:** *Arnold & Clifford LLP, Damion M. Clifford*, and *Michael L. Dillard, Jr.*, for appellants. **Argued:** *Michael L. Dillard, Jr.*

APPEAL from the Franklin County Court of Common Pleas

BOGGS, P.J.

{¶ 1} Defendants-appellants, Sunshine Stores, LLC, and Muhammad Chaudhry (collectively "Sunshine"), appeal the judgment of the Franklin County Court of Common Pleas (1) granting the application of plaintiff-appellee, Moran Foods, LLC (d.b.a. Save-A-Lot Ltd.) ("Moran"), to confirm an arbitration award, (2) denying Sunshine's motion to vacate or modify the arbitration award, and (3) granting Moran's motion to dismiss Sunshine's counterclaims. For the following reasons, we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. Underlying facts and arbitration proceedings

{¶ 2} Moran is the owner and licensor of the Save-A-Lot brand and the supplier of goods and services to Save-A-Lot stores throughout the United States. At relevant times,

Sunshine Stores was the owner and operator of numerous Save-A-Lot stores, which it purchased from Moran and operated under license and supply agreements ("LSAs") between itself and Moran. Chaudhry is the sole member of Sunshine Stores. Each of the parties' LSAs contains an agreement to arbitrate "[a]ny controversy, claim, or dispute of whatever nature arising between or among the Parties, including any issues of arbitrability" pursuant to Missouri substantive law and the Federal Arbitration Act. (Apr. 28, 2025 Aff. of Christopher LaRose in Support of App. for Order Confirming Arbitration Award, Ex. A, at Bates #000356, #000404, #000441.)

{¶ 3} On May 5, 2023, Moran filed a demand for arbitration with the American Arbitration Association in *Moran Foods, LLC d/b/a Save-A-Lot Ltd. v. Sunshine Stores, LLC, et al.*, American Arbitration Association case No. 01-23-0002-0546. Moran claimed that Sunshine owed it: (1) $14,684,105.62 for inventory that Sunshine ordered and received but had not paid for; (2) $1,718,044.29 in unpaid principal on a loan from Moran to Sunshine that enabled Sunshine to purchase certain Save-A-Lot stores; (3) $1,227,868.37 for utility payments that Moran made on Sunshine's behalf; and (4) accrued interest. Sunshine filed a counterclaim for fraudulent inducement against Moran in the arbitration proceedings, claiming that Moran fraudulently induced Sunshine to purchase the stores through misrepresentations as to their expected profitability. The parties jointly agreed to scheduling orders that permitted each party to file a dispositive motion, and they engaged in discovery.

{¶ 4} On May 16, 2023, shortly after filing its demand for arbitration, Moran turned to the Franklin County Court of Common Pleas, filing a complaint for the appointment of a receiver over Sunshine Stores' assets and for a declaratory judgment that the parties' LSAs had terminated and that an "option event," as defined in the LSAs, had occurred, giving Moran an exclusive right of first refusal and an option to purchase all or a portion of the stores' assets. *See Moran Foods v. Sunshine Stores, LLC*, Franklin C.P. No. 23CV-3574 (the "receivership case"). [1]

{¶ 5} In the arbitration proceedings, Moran filed a motion for summary judgment supported by written evidence, and Sunshine filed a memorandum opposing Moran's

---

[1] The trial court's judgment in the receivership case, issued May 15, 2025, is the subject of a separate appeal in this court.

motion on its merits.  On December 4, 2024, the arbitration panel issued an interim award granting Moran's motion for summary judgment.  The arbitration panel stated:

> Sunshine does not dispute that [the monies sought by Moran] are owed. Rather, it alleges that it was fraudulently induced to purchase the stores by misrepresentations made by Moran as to their expected profitability, and that its damages resulting from the purchase (primarily its net operational losses for 2021 and 2022, plus the "lost profits" that it would have earned had the profits been as Moran projected) exceeded the amounts claimed by Moran.

(May 23, 2025 LaRose Supp. Aff., Ex. 2.)  The arbitration panel rejected Sunshine's fraudulent-inducement counterclaim in its entirety, finding that projections of future profitability cannot form a basis for fraud, that Sunshine's claimed reliance on Moran's projections was unreasonable, that Sunshine effectively waived any fraud claim by not raising it when it became apparent the stores would not generate the returns projected by Moran, and that there is no proof that profit shortfalls were due to alleged fraud.  The interim award for Moran included $14,684,105.62 for unpaid inventory, $1,718,044.29 in unpaid loan principal, and $1,227,868.37 for utility payments made on Sunshine's behalf. The arbitration panel instructed Moran to submit evidence  and legal arguments in support of its claims for interest and attorney fees and stated, "The Interim Award shall remain in full force and effect until such time as a final Award is rendered." *Id.*

{¶ 6}    Following issuance of the interim award, Moran took action to exercise its rights as a secured creditor under the LSAs and the Security Agreement executed in conjunction with a loan from Moran to Sunshine in connection with Sunshine's initial purchase of Save-A-Lot stores.  Section 12(h) of the LSAs provides:

> Upon the occurrence of any default by [Sunshine] . . . [Moran] as a "secured party" (as such term is defined in the UCC [Uniform Commercial Code]), may proceed to enforce payment of Secured Obligations and to exercise any and all rights and remedies afforded to a "secured party" under the UCC and/or otherwise granted to [Moran] and to realize upon any Collateral with or without judicial process.

(LaRose Aff., Ex. A at Bates #000351, #000400, #000437.)  The Security Agreement similarly gave Moran "the right to sell or otherwise dispose of all or any part of the

Collateral, either at public or private sale, in lots or in bulk . . . and upon such terms and conditions [Moran], in its sole discretion, may deem advisable." (LaRose Supp. Aff., Ex. 3.)

{¶ 7} On January 21, 2025, Moran issued a notification that Sunshine Stores' personal property would be offered for sale to the highest qualified bidder on January 31, 2025 pursuant to Article 9 of the Missouri Uniform Commercial Code. Schedule A to the notification listed 36 grocery stores owned and operated by Sunshine Stores and broadly defined the property to be sold as including:

> Any and all present and future right, title, and interest in all of the assets and rights of Debtor, whether now owned by or owing to, or hereafter acquired by or arising in favor of, Debtor used or useful in or arising in connection with the Store and/or the Assets, including but not limited to . . . all Accounts[,] Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, Equipment, Fixtures, General Intangibles, Goods, Health-Care-Insurance Receivables, Instruments, Inventory, Investment Property, Letters of Credit, Letter-of-Credit Rights, Money, and Promissory Notes[,] . . . all of Debtor's leases, lease contracts, lease agreements, records, franchises, customer lists, insurance refunds, insurance refund claims, tax refunds, tax refund claims, pension plan refunds, and pension plan reversions[.]

(May 7, 2025 Answer & Countercl. of Defs.-Respondents, Ex. A.) It defined "assets" as "substantially all of the assets of the Store, including, without limitation, any inventory, materials, supplies, goodwill, trade fixtures, furniture, and equipment of the Store." *Id.*

{¶ 8} Sunshine unsuccessfully sought a temporary restraining order in the receivership case to stop the sale, challenging the commercial reasonableness of the sale and arguing that allowing the sale to proceed would be inconsistent with Moran's request for a receivership to preserve the value and operations of Sunshine's stores. The trial court denied Sunshine's motion for a restraining order on January 31, 2025, and the UCC sale proceeded the same day at the Columbus offices of Moran's counsel. With a credit bid of $7,850,000, Moran purchased "all the assets advertised for sale, less . . . [a]ll leases, lease contracts, and lease agreements with respect to" 14 identified stores, which Moran "specifically excluded from the purchased assets." (Answer & Countercl. Ex. B.)

{¶ 9} On February 12, 2025, approximately two weeks after the UCC sale, the arbitration panel issued its final award, which addressed the outstanding issues regarding interest and expenses. The arbitration panel denied Moran's request for expenses, but it

awarded Moran two-thirds of its requested attorney fees. The final award for Moran consisted of (1) $14,684,105.62 for unpaid inventory, plus interest in the amount of $2,953,982.09 and per diem interest of $4,827.65 after January 6, 2025; (2) $1,718,044.29 in unpaid loan principal, plus interest in the amount of $532,421.84 and per diem interest of $369.94 after January 6, 2025; (3) $1,227,868.37 for utility payments made by Moran, plus interest in the amount of $226,398.67 and per diem interest of $302.76 after January 6, 2025; and (4) $639,674.33 for attorney fees.

### B. Trial court proceedings

{¶ 10} On April 18, 2025, Moran initiated this case by filing its application for an order confirming the arbitration award. Sunshine filed an answer and counterclaims for breach of contract, violation of the UCC, declaratory judgment, unjust enrichment, and specific performance. Sunshine also filed a combined motion to vacate and/or modify the arbitration award and memorandum in opposition to Moran's application to confirm the arbitration award, in which it argued that the arbitration panel had exceeded its authority by not conducting a trial on the parties' claims and by issuing an award that violates both Ohio and Missouri law in light of the UCC sale. Moran filed a motion to dismiss Sunshine's counterclaims, arguing that a counterclaim is an improper response to an application to confirm an arbitration award.

{¶ 11} The trial court granted Moran's application to confirm the arbitration award, denied Sunshine's motion to vacate or modify the arbitration award, and granted Moran's motion to dismiss Sunshine's counterclaim. Sunshine filed a timely notice of appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Sunshine raises three assignments of error for this court's review:

> [1.] The trial court abused its discretion in denying Appellants' Motion to Vacate, and instead, entering an order and judgment granting Appellee's application to confirm the arbitration award.

> [2.] The trial court erred in dismissing Appellants' counterclaim.

> [3.] The trial court erred in denying Appellants' Motion to Vacate when the Arbitration Panel granted summary judgment in favor of Moran without conducting a hearing.

(Appellants' Brief at 1-2.)

## III. ANALYSIS

### A. Assignment of Error No. 2

{¶ 13}  For ease of discussion, we will address Sunshine's assignments of error out of order, beginning with the second assignment of error, by which Sunshine argues that the trial court erred by dismissing its counterclaims.  We review a trial court's decision to dismiss a claim pursuant to Civ.R. 12(B)(6), for failure to state a claim upon which relief can be granted, de novo.  *State ex rel. Ohio Civ. Serv. Empls. Assn. v. State*, 2016-Ohio-478, ¶ 12, citing *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5.

{¶ 14}  Sunshine argues that its counterclaims, and particularly its claim that Moran violated the UCC by conducting a commercially unreasonable sale of Sunshine Stores' assets, are compulsory counterclaims it was required to file here.  Civ.R. 13(A) states, "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."  Sunshine argues that its counterclaims are compulsory counterclaims under Civ.R. 13(A), because they arise out of the transaction or occurrence that is the subject of Moran's claims for relief in the arbitration proceeding.  We disagree.

{¶ 15}  Sunshine cites several cases in which courts have applied the doctrine of res judicata to preclude the assertion of claims that should have been previously pursued as compulsory counterclaims in a prior action.  *See Grill v. Artistic Renovations*, 2018-Ohio-747 (8th Dist.); *Karnofel v. Superior Waterproofing, Inc.*, 2017-Ohio-9346 (11th Dist.); *Ferrara v. Vicchiarelli Funeral Servs., Inc.*, 2016-Ohio-5144 (8th Dist.).  None of those cases, however, involved an action to confirm, vacate, or modify an arbitration award; they are therefore distinguishable and unpersuasive here.

{¶ 16}  This court addressed arguments regarding the application of Civ.R. 13(A) in the context of proceedings to confirm, vacate, or modify an arbitration award in *Licking Hts. Local School Dist. Bd. of Edn. v. Reynoldsburg City School Dist. Bd. of Edn.*, 2013-Ohio-3211, ¶ 22 (10th Dist.) ("*Reynoldsburg II*"). There, a dispute between the Reynoldsburg City School District Board of Education ("Reynoldsburg") and the Licking

Heights Local School District Board of Education ("Licking Heights") had been resolved through arbitration. Reynoldsburg initially filed an application for an order vacating the arbitration award. The trial court denied Reynoldsburg's application, and this court affirmed the trial court's judgment on appeal. *See Reynoldsburg City School. Dist. Bd. of Edn. v. Licking Hts. Local School Dist. Bd. of Edn.*, 2011-Ohio-5063 (10th Dist.) ("*Reynoldsburg I*"). While *Reynoldsburg I* was pending on appeal, Licking Heights initiated a separate case in the trial court by filing an application for an order confirming the arbitration award. The trial court confirmed the arbitration award after this court decided *Reynoldsburg I*, and Reynoldsburg again appealed.

{¶ 17} In *Reynoldsburg II,* Reynoldsburg argued that res judicata and collateral estoppel barred Licking Heights' application to confirm the arbitration award, because the request for confirmation was a compulsory counterclaim that Licking Heights was required to raise in response to Reynoldsburg's application to vacate the arbitration award. This court rejected that argument and affirmed the trial court's confirmation of the arbitration award, holding that Civ.R. 13(A) does not apply to proceedings brought under R.C. Chapter 2711. *Reynoldsburg II* at ¶ 22.

{¶ 18} A proceeding involving the confirmation or vacatur of an arbitration award is a special statutory proceeding. *Id.* at ¶ 19, citing *MBNA Am. Bank, N.A. v. Anthony*, 2006-Ohio-2032, ¶ 12 (5th Dist.). "[T]o the extent they would by their nature be clearly inapplicable," the rules of civil procedure do not apply to special statutory proceedings. Civ.R. 1(C)(8). An application to confirm, vacate, or modify an arbitration award "shall be made and heard in the manner provided by law for the making and hearing of motions." R.C. 2711.05. Therefore, " '**the applicable rules in both the local rules and Ohio Rules of Civil Procedure are those pertaining to motions rather than those pertaining to the commencement of an action.**' " (Emphasis in original.) *Reynoldsburg II* at ¶ 20, quoting *Reynoldsburg I* at ¶ 15. By its terms, Civ.R. 13(A) does not pertain to motions; it concerns counterclaims and crossclaims, both of which are pleadings under the civil rules. *Id.* at ¶ 21, citing Civ.R. 7(A). The civil rules " 'do not provide for an answer and counterclaim to a motion.' " *Id.* at ¶ 19, quoting *Anthony* at ¶ 13. Accordingly, Civ.R. 13(A) does not apply to a proceeding to confirm, vacate, or modify an arbitration award. In *Reynoldsburg II*, we therefore rejected Reynoldsburg's argument

that Licking Heights was required to have raised its claim for confirmation as a counterclaim in response to Reynoldsburg's initial application to vacate the arbitration award.

{¶ 19} Sunshine's only recourse to challenge the arbitration award is as provided in R.C. Chapter 2711. *See Asset Acceptance, LLC v. Stanick*, 2004-Ohio-6912, ¶ 16 (8th Dist.). A counterclaim for damages is neither authorized by statute, *id*. at ¶ 15, nor required by Civ.R. 13(A) in this context. The trial court therefore did not err by granting Moran's motion to dismiss Sunshine's counterclaims, and we accordingly overrule Sunshine's second assignment of error.

### B. Assignments of Error Nos. 1 and 3

{¶ 20} We now turn to Sunshine's first and third assignments of error, which challenge the trial court's order confirming the arbitration award and denying Sunshine's motion to vacate or modify the arbitration award.

### 1. Arbitration and the Standard of Review

{¶ 21} Ohio has a well-established public policy in favor of arbitration. *State v. Ohio Civ. Serv. Empls. Assn., Local 11 AFSCME AFL-CIO*, 2016-Ohio-5899, ¶ 12 (10th Dist.), citing *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 711 (1992). "Arbitration occurs when disputing parties contractually agree to resolve their conflict by submitting it to a neutral third party for resolution. It provides the parties with a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets." *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 84 (1986). " '[I]t is the policy of the law to favor and encourage arbitration[,] and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts.' " *Id.*, quoting *Campbell v. Automatic Die & Prods. Co.*, 162 Ohio St. 321, 329 (1954).

{¶ 22} A trial court's jurisdiction to review an arbitration award "is 'narrow' and 'limited.' " *Champion Chrysler v. Dimension Serv. Corp.*, 2018-Ohio-5248, ¶ 10 (10th Dist.), quoting *Warren Edn. Assn. v. Warren City Bd. of Edn.*, 18 Ohio St.3d 170, 173 (1985). "Once an arbitration is completed, a court has no jurisdiction except to confirm and enter judgment (R.C. 2711.09 and 2711.12), vacate (R.C. 2711.10 and 2711.13), modify (R.C. 2711.11 and 2711.13), correct (R.C. 2711.11 and 2711.13), or enforce the judgment (R.C.

2711.14)." *State ex rel. R.W. Sidley, Inc. v. Crawford*, 2003-Ohio-5101, ¶ 22. The whole purpose of arbitration would be undermined if courts had broad authority to vacate an arbitrator's award. *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities* at 83-84.

{¶ 23} " 'Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.' " *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 2001-Ohio-294, ¶ 9, quoting *United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987). " ' "[W]hen parties agree to submit their disputes to binding arbitration, they have bargained for the arbitrator's determination concerning the issues submitted and agreed to accept the result regardless of its legal or factual accuracy." ' " *Dodge v. Dodge*, 2017-Ohio-7087, ¶ 28 (10th Dist.), quoting *Robert W. Setterlin & Sons v. N. Market Dev. Auth., Inc.*, 1999 Ohio App. LEXIS 6468 *4 (10th Dist. Dec. 30, 1999), quoting *Marra Constructors, Inc. v. Cleveland Metroparks Sys.*, 82 Ohio App.3d 557, 562 (8th Dist. 1993). " 'A trial court may not evaluate the actual merits of an award and must limit its review to determining whether the appealing party has established that the award is defective within the confines of R.C. Chapter 2711.' " *Champion Chrysler* at ¶ 10, quoting *Telle v. Estate of William Soroka*, 2008-Ohio-4902, ¶ 9 (10th Dist.). "Arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator." *Dodge* at ¶ 13.

{¶ 24} When a party applies to a court for an order confirming an arbitration award, the court "shall grant such an order and enter judgment thereon, unless the award is vacated, modified, or corrected as prescribed in [R.C.] 2711.10 and 2711.11." R.C. 2711.09. A court may vacate an arbitration award under R.C. 2711.10 only if: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption by the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, refusing to hear pertinent, material evidence, or in other ways that prejudiced the rights of a party; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *Champion Chrysler* at ¶ 11. R.C. 2711.11 similarly sets out the following limited bases upon which a common pleas court may modify or correct an arbitration award:

(A) There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

(C) The award is imperfect in matter of form not affecting the merits of the controversy.

*Id.*

{¶ 25} "An appeal may be taken from an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding or from a judgment entered upon an award." R.C. 2711.15. The standard of review on appeal from the court of common pleas, however, is even more restrictive than the standard of review the trial court applies when determining whether to confirm, vacate, or modify an arbitration award. *Norman v. Kellie Auto Sales, Inc.*, 2020-Ohio-4311, ¶ 33 (10th Dist.). As this court has explained:

> "[W]hen a court of appeals reviews a trial court's judgment concerning an arbitration award, the appellate court must confine its review to evaluating the order issued by the trial court pursuant to R.C. Chapter 2711." *State v. Ohio Civ. Serv. Emps.* at ¶ 13. Thus, when "an appeal is taken from an order confirming, modifying, correcting, or vacating an arbitration award, the review is confined to the order and the original arbitration proceedings are not reviewable." *Robert W. Setterlin & Sons v. North Mkt. Dev. Auth.*, 10th Dist. No. 99AP-141, 1999 Ohio App. LEXIS 6468 (Dec. 30, 1999), citing *Lockhart v. Am. Reserve Ins. Co.*, 2 Ohio App.3d 99, 101 . . . (8th Dist.1981). That limited "review of the trial court's decision confirming arbitration is conducted under an abuse of discretion standard." *MBNA Am. Bank, N.A.* at ¶ 11.

*Champion Chrysler* at ¶ 14. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### 2. Assignment of Error No. 1

{¶ 26} Sunshine's first assignment of error states the trial court abused its discretion by denying Sunshine's application to vacate the arbitration award and granting Moran's application to confirm the award. The essence of Sunshine's argument is that the trial court

should not have confirmed the arbitration award because the arbitration panel did not consider "evidence of an unlawful UCC sale that impacted the arbitration award as a matter of law." (Appellant's Brief at 3.) Sunshine's argument focuses primarily on its contention that the UCC sale did not satisfy the requirement under the UCC that the disposition of collateral must be commercially reasonable.[2]  *See* R.S.Mo. 400.9-610; R.C. 1309.610. Sunshine maintains that the commercial unreasonableness of the sale discharges it from any deficiency judgment. Based on the alleged commercial unreasonableness of the UCC sale and Moran's alleged failure to advise the arbitration panel of the UCC sale, Sunshine argues that the arbitration award must be vacated (1) under R.C. 2711.10(A), because it was procured by corruption, fraud, or undue means, (2) under R.C. 2711.10(C), because Moran hid from the arbitrators evidence of the commercially unreasonable sale, and (3) under R.C. 2711.10(D), because the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award was not made.

{¶ 27} As to R.C. 2711.10(A), Sunshine argued that Moran's actions in selling and buying Sunshine Stores' assets through the UCC sale contravened the relief it sought in the receivership case and limited the amount Moran could recover as part of the arbitration award. Sunshine further argued that Moran's failure to inform the arbitrators of the UCC sale gave Moran an unfair advantage over Sunshine. As a result, Sunshine claimed the arbitration award was procured by corruption, fraud, or undue means, and must be vacated.

{¶ 28} The trial court summarily rejected Sunshine's argument under R.C. 2711.10(A), finding Sunshine made no allegation of corruption, fraud, or undue means by the arbitrators. Citing *Cleveland v. Cleveland Police Patrolmen's Assn.*, 2012-Ohio-5746, ¶ 19 (8th Dist.), the trial court stated the provisions of R.C. 2711.10 relate to the conduct of the arbitrator, not the opposing party. The trial court correctly determined that Sunshine did not identify any corruption, fraud, or undue means employed by the arbitrators themselves, but even if R.C. 2711.10(A) does not require that an award arise from corruption, fraud, or undue means *by the arbitrators*, we do not find that the trial court

---

[2] Sunshine argues, in part, that Moran did not attempt to market the sale to potential buyers, did not engage industry or real estate professionals other than lawyers, and ensured there would not be open, public bidding, resulting in a drastically reduced sale price.

abused its discretion by concluding that Sunshine failed to establish grounds for relief under R.C. 2711.10(A).

{¶ 29} The fact that Moran did not inform the arbitrators about the UCC sale does not demonstrate that the arbitration award was procured by corruption, fraud, or undue means. The arbitrators had resolved the merits of Moran's claims and held that Moran was entitled to judgment prior to the UCC sale, and Moran's use of mechanisms authorized by the UCC and by its agreements to recoup some of the losses recognized in the arbitration panel's interim award does not demonstrate corruption, fraud, or undue means. Moreover, Sunshine cites no authority in support of its suggestion that Moran was obligated to inform the arbitration panel of the sale, when the panel had already determined that Moran was entitled to millions of dollars in damages. Indeed, the UCC sale did not affect the merits of Moran's claims against Sunshine, even if it does affect its rights to collect on those claims. Further, if Sunshine believed the outcome of the UCC sale should reduce the amount of the arbitration award, Sunshine itself could have moved the arbitration panel to consider the effect of the sale prior to issuing a final award, but it did not do so. Accordingly, we conclude that the trial court did not abuse its discretion in rejecting Sunshine's arguments in favor of vacatur under R.C. 2711.10(A).

{¶ 30} We also easily affirm the trial court's rejection of R.C. 2711.10(C) as a basis for vacating the arbitration award. R.C. 2711.10(C) permits a trial court to vacate an arbitration award if the arbitrators committed misconduct by "refusing to hear evidence pertinent and material to the controversy." The whole of Sunshine's argument in support of vacating the arbitration award is that Moran facilitated a commercially unreasonable UCC sale of Sunshine Stores' assets, resulting in a depressed purchase price, without informing the arbitration panel of the sale. R.C. 2711.10(C) applies specifically to misconduct by the arbitrators, which Sunshine has not identified. In fact, Sunshine acknowledges in both its motion to vacate and its appellate brief, "the arbitrators themselves did not affirmatively commit misconduct." (May 9, 2025 Mot. to Vacate at 12; Appellants' Brief at 19.) Rather, according to Sunshine, "the Final Award constitutes misconduct because Moran hid evidence of the commercially unreasonable sale from [the arbitrators] that would have required them to limit the award to the amount Moran received for the assets." *Id.* at 12. Even assuming Moran had an obligation to inform the

arbitrators of the UCC sale, its failure to do so does not provide a basis for vacating the arbitration award under R.C. 2711.10(C), as it does not involve misconduct by the arbitrators. As the trial court held, the arbitration panel cannot be found to have committed misconduct in refusing to hear evidence that was not presented to it.

{¶ 31} As to Sunshine's third argument for vacatur—that the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made—the trial court held that neither Moran's alleged withholding of evidence of the UCC sale from the arbitrators nor the arbitrators' issuance of an award on a motion for summary judgment demonstrated the arbitrators exceeded their powers. As with Sunshine's claims under R.C. 2711.10(A) and (C), we discern no abuse of discretion in the trial court's resolution of Sunshine's claim for vacatur of the arbitration award under R.C. 2711.10(D).

{¶ 32} An arbitrator's power derives from the parties' arbitration agreement. *Cleveland Constr., Inc. v. Ruscilli Constr. Co.*, 2023-Ohio-363, ¶ 17 (10th Dist.), citing *Professionals Guild of Ohio v. Franklin Cty. Children Servs.*, 2008-Ohio-6682, ¶ 13 (10th Dist.). An arbitrator exceeds his or her powers when the arbitration award " 'conflicts with the express terms of the agreement or cannot be derived rationally from the terms of the agreement.' " *Id.*, quoting *Summit Cty. Children Servs. Bd. v. Community Workers, Local 4546*, 2007-Ohio-1949, ¶ 13. "[W]here 'there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful,' the arbitrator's award draws its essence from the parties' agreement and will not be vacated under R.C. 2711.10(D).' " *Id.*, quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities*, 22 Ohio St.3d 80, at paragraph one of the syllabus.

{¶ 33} Sunshine offers no argument that the arbitrators issued an award that conflicts with the express terms of the parties' agreements or that cannot be rationally derived from the terms of the agreements. Rather, without tying its arguments to the language of the agreement, Sunshine argued that the arbitrators "exceeded their authority by not conducting a trial on Moran's, Sunshine's, and Chaudhry's claims and by issuing an award that violates both Ohio and Missouri law in light of events that occurred after the interim award and just before the final award was issued." (Mot. to Vacate at 1.) We

address Sunshine's argument regarding the lack of a trial in relation to Sunshine's third assignment of error below.

{¶ 34} Sunshine argues that the final arbitration award is contrary to Ohio and Missouri law because it exceeds the sale amount obtained from the allegedly commercially unreasonable UCC sale, but that argument is misplaced. Even assuming the UCC sale was not commercially reasonable and that Moran's collectable damages should be limited as a result, that does not establish grounds to vacate the arbitration award. When parties agree to submit their disputes to binding arbitration, " ' "they have bargained for the arbitrator's determination concerning the issues submitted and agreed to accept the result regardless of its legal or factual accuracy." ' " *Dodge*, 2017-Ohio-7087, at ¶ 28, quoting *Robert W. Setterlin & Sons*, 1999 Ohio App. LEXIS 6468, at *4, quoting *Marra Constructors, Inc. v. Cleveland Metroparks Sys.*, 82 Ohio App.3d 557, 562 (8th Dist. 1993). We cannot conclude that the trial court abused its discretion by determining that the arbitration panel acted within the limits of its authority when it entered its award in favor of Moran, particularly because the only basis for Sunshine's argument—the result of the UCC sale—was not presented to the arbitration panel for consideration. That such additional information might have been presented to the arbitration panel does not demonstrate that the panel, in entering an award based on the evidence before it, exceeded the authority granted to it by the parties' agreements.

{¶ 35} Sunshine alternatively argues under its first assignment of error that the trial court abused its discretion in denying Sunshine's motion to modify the arbitration award pursuant to R.C. 2711.11. The grounds for modification of an arbitration award in R.C. 2711.11 "are mechanical and clerical, including circumstances where the arbitrator miscalculated figures, incorrectly described a certain property or person, or otherwise erred 'in matter of form,' rather than on the merits." *Harris v. Vision Energy, LLC*, 2024-Ohio-2878, ¶ 42 (1st Dist.). Sunshine maintains that, as an alternative to vacating the arbitration award, the trial court should have modified it to eliminate any deficiency following the commercially unreasonable UCC sale under R.C. 2711.11(A), which permits modification when "[t]here was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award," or

R.C. 2711.11(C), which permits modification when "[t]he award is imperfect in matter of form not affecting the merits of the controversy."

{¶ 36} R.C. 2711.11(A) is inapplicable under the circumstances of this case. A trial court's authority to modify an arbitration award because of material miscalculation or mistake extends only to an error that "appear[s] on the face of the arbitration award." *Robert W. Setterlin & Sons* at *5. *See also Akron v. Akron Firefighters Assn.*, 2015-Ohio-994, ¶ 9 (9th Dist.), citing *Arrow Uniform Rental, L.P. v. K & D Group, Inc.*, 2011-Ohio-6203, ¶ 51 (11th Dist.). "[T]he type of errors in an arbitration award that warrant correction by a trial court are those that appear on the face of the award and are of a nature that can be corrected without the use of factfinding, discretion, or judgment on the part of the trial court." *Robert W. Setterlin & Sons* at *6, citing *Rathweg Ins. Assoc., Inc. v. First Ins. Agency Corp.*, 1992 Ohio App. LEXIS 4433 (2d Dist. Aug. 18, 1992). The final arbitration award does not contain a material miscalculation evident from the face of the award itself. That the final arbitration award exceeds the sale/purchase price obtained at the UCC sale of Sunshine Stores' property is not an error apparent on the face of the award that can be corrected without factfinding, discretion, or judgment by the trial court, even if it might afford Sunshine a defense to Moran's efforts to collect on the award. At the very least, factfinding would be required to determine that the UCC sale was not commercially reasonable.

{¶ 37} R.C. 2711.11(C) is similarly inapplicable. Sunshine fails to show how the arbitrators erred as to a matter of form, rather than as to a matter of substance. Essentially, Sunshine claims that the UCC sale satisfied Sunshine's debt to Moran and, because the sale was commercially unreasonable, Sunshine is not liable for any deficiency remaining thereafter. But confirmation of an arbitration award is a separate issue from a defendant's satisfaction of the award. *Henderson v. Summerville Ford-Mercury, Inc.*, 405 S.C. 440, 452 (2013). That Sunshine might be entitled to a credit against the amount of the arbitration award does not demonstrate that the arbitrators erred as to form when determining the amount of Moran's damages on the merits.

{¶ 38} Having concluded that the trial court did not abuse its discretion by denying Sunshine's motion to vacate or modify the arbitration award and by granting Moran's

motion to confirm the arbitration award, we overrule Sunshine's second assignment of error.

### 3.  Assignment of Error No. 3

{¶ 39} Sunshine's third and final assignment of error asserts that the trial court erred in denying the motion to vacate the arbitration award, because the arbitration panel granted summary judgment in favor of Moran without conducting a hearing.  We disagree.  While Sunshine argues that the arbitration provisions in the LSAs did not waive the right to have disputes heard by an arbitration panel in an oral evidentiary hearing, neither did those provisions preclude the parties or the arbitrators from establishing the procedure that would govern the arbitration proceedings.

{¶ 40} Parties who agree to arbitrate a dispute "trade the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  *Prosper Bus. Dev. Corp. v. Intervenor (In re BIGResearch L.L.C.)*, 2012-Ohio-2992, ¶ 52 (10th Dist.).  *See also Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co.*, 2000 U.S. App. LEXIS 1909, *16 (6th Cir. Feb. 8, 2000), citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citation omitted).  Arbitration may proceed summarily.  *Louisiana D. Brown 1992 Irrevocable Trust* at *17, citing *Robbins v. Day*, 954 F.2d 679 (11th Cir. 1992) (an arbitrator "need only give each party the opportunity to present its arguments and evidence").  When parties have agreed to submit the subject-matter of a dispute to arbitration, "procedural questions that grow out of the dispute and bear on its final disposition are to be left to the arbitrator."  *FOP Capital City Lodge No. 9 v. Reynoldsburg*, 2013-Ohio-1057, ¶ 26, citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964).  This includes whether the parties may submit the dispute to the arbitrator on dispositive motions.  *See Artreus Communities Group of Ariz. v. Stardust Dev., Inc.*, 229 Ariz. 503, 508 (App.Div. 1 2012) ("an arbitrator has the implied power to grant summary judgment. . . . Summary judgment by an arbitrator is consistent with [the purpose of arbitration] when the parties do not expressly prohibit summary judgment in their agreement, provided the parties receive a fair opportunity to present their case").

{¶ 41} Sunshine and Moran expressly agreed that either party was entitled to file a dispositive motion in the arbitration proceedings.  The parties fully briefed Moran's motion

for summary judgment and presented the arbitrators with substantial evidence in support of and in opposition to that motion. Furthermore, when the arbitration panel issued its interim award, granting Moran's motion for summary judgment and rejecting Sunshine's counterclaims, Sunshine did not object to the award on procedural grounds. *See Barrick Ents. v. Crescent Petroleum, Inc.*, 496 Fed. Appx. 614, 618-619 (6th Cir. 2012) ("[P]arties in arbitration waive their right to complain about defects in the arbitration process if such objections are not raised at that time."); *Goldman, Sachs, & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 149-150 (3d Cir. 2015) (a party waives its right to seek vacatur on grounds of misconduct when it had constructive knowledge of the alleged misconduct during the arbitration proceedings but did not challenge it then). With Sunshine having agreed to the filing of dispositive motions and having not objected to the arbitration panel's decision for lack of an oral, evidentiary hearing, we cannot conclude that the trial court abused its discretion by concluding that the arbitration panel did not exceed its authority by deciding this matter on Moran's motion for summary judgment. Accordingly, we overrule Sunshine's third assignment of error.

## IV. CONCLUSION

{¶ 42} Having overruled each of Sunshine's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

EDELSTEIN and DINGUS, JJ., concur.

———————————